JCW ELECTRONICS, INC., Petitioner,

v.

Pearl Iriz GARZA, Individually and on behalf of the Estate of Rolando Domingo Montez, Deceased, and Belinda Leigh Camacho, Individually and as next friend of Rolando Kadric Montez, a Minor Child, Respondents.

No. 05–1042.

Supreme Court of Texas.

Argued Oct. 18, 2007.

Decided June 27, 2008.

Thomas F. Nye, Robert William Clore, Vidaurri, Lyde, Gault & Quintana, L.L.P., Linda C. Breck, Corpus Christi, TX, Thomas Sullivan, Brin & Brin, P.C., Brownsville, TX, Tamara Rodriguez, Rodriguez Legal Group, Edinburg, TX, for Petitioner.

Benigno Martinez III, Tony Martinez, Martinez Barrera Y Martinez, L.L.P., A.C. Nelson, Brownsville, Jane M.N. Webre, Scott Douglass & McConnico, L.L.P., Austin, TX, for Respondent.

Greg White, Naman, Howell, Smith & Lee LLP, Waco, TX, for Amicus Curiae.

Justice MEDINA delivered the opinion of the Court.

■ Chapter 33 of the Texas Civil Practice and Remedies Code apportions responsibility among those responsible for damages in "any cause of action based on tort." TEX. CIV. PRAC. & REM.CODE § 33.002(a)(1). In this appeal, we are asked whether a claim for breach of implied warranty under article 2 of the Texas Uniform Commercial Code [1] is a tort claim to which Chapter 33's apportionment scheme should apply. The court of appeals concluded that Chapter 33 did not apply to this type of claim because a "complete framework of rights and remedies for transacting parties" was already available under article 2 of the UCC. 176 S.W.3d 618, 633 (quoting *Garcia v. Tex. Instruments, Inc.,* 610 S.W.2d 456, 461 (Tex. 1980)). We disagree and hold that a party who seeks damages for death or personal injury under a breach of implied warranty claim seeks damages in tort and is accordingly subject to Chapter 33.

## I

On November 14, 1999, Rolando Domingo Montez was arrested for public intoxication and placed in the Port Isabel jail. The next day, Montez called his mother, Pearl Iriz Garza, to arrange his bail. Montez made the call from his jail cell on a phone provided by JCW Electronics, Inc. ("JCW"). JCW had installed these collect-only telephones for inmate use under a 1998 contract with the Port Isabel Police Department. Tragically, on the day he was to be released, Montez was found dead in his cell, hanging from the telephone cord.

Garza sued the City of Port Isabel for her son's death and subsequently joined

---

1. Article 2 of the Uniform Commercial Code is codified as part of the Texas Business and Commerce Code. *See* TEX. BUS. & COMM.CODE §§ 2.101–.725.

JCW as a defendant.[2] The case was tried to a jury who generally found in Garza's favor on claims of negligence, misrepresentation, and breach of implied warranty of fitness. The jury attributed sixty percent of the liability to Montez, twenty-five percent to the City of Port Isabel, and fifteen percent to JCW. JCW moved for judgment, arguing that the sixty percent finding of fault the jury attributed to Montez barred Garza's recovery on all pleaded claims under Chapter 33. Garza, however, moved to disregard certain inconsistent jury findings and for judgment notwithstanding the verdict, asking the court to render judgment against JCW for breach of contract and fraud. The trial court granted Garza's motions, rendering judgment for her on these theories over JCW's objections.

The court of appeals declined to affirm the judgment under these theories, concluding that Garza's contract claim had not been pled and her fraud claim was barred under Chapter 33. 176 S.W.3d at 625–26. The court of appeals concluded, however, that Garza's judgment could be affirmed on the jury's finding of breach of implied warranty of fitness for a particular purpose because there was evidence that JCW had represented to the Port Isabel Chief of Police that the telephones would be safe for "unattended or unsupervised use by inmates." *Id.* at 630. In affirming the trial court's judgment, the court rejected JCW's contention that Chapter 33 barred Garza's implied warranty claim. *Id.* at 632. The court of appeals held instead that Chapter 33 did not apply to a claim for breach of implied warranty, noting that "any extension of chapter 33's proportion-

ate responsibility scheme to UCC article 2 could potentially disrupt and override 'the UCC's express purpose of furthering uniformity among the states.'" *Id.* at 633 (quoting *Sw. Bank v. Information Support Concepts, Inc.*, 149 S.W.3d 104, 110–11 (Tex.2004)). We granted review to consider whether Chapter 33's proportionate responsibility scheme extends to a breach of implied warranty claim.

## II

■ Over the past two decades, the Legislature has repeatedly modified the comparative fault rules in tort cases. In 1987, the Legislature replaced the existing statutory and common law schemes with Chapter 33's comparative responsibility framework. *See* Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, §§ 2.03–2.11B, 1987 Tex. Gen. Laws 37, 40–44 (amended 1995). In 1995, the Legislature again amended Chapter 33 by replacing comparative responsibility with proportionate responsibility. *See* Act of May 8, 1995, 74th Leg., R.S., ch. 136, § 1, 1995 Tex. Gen. Laws 971, 971–75 (amended 2003). Further amendments were made to the chapter in 2003. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, §§ 4.01–.12, 2003 Tex. Gen. Laws 847, 855–59 (codified as amended at TEX. CIV. PRAC. & REM.CODE §§ 33.001–.017). Because of these repeated amendments, we must first identify which version of Chapter 33 governs this case. Here, the 1995 version of Chapter 33 applies because Garza's son died on November 16, 1999.[3]

## A

Garza argues that the Legislature intended to exclude implied warranty claims

---

**2.** The mother of Montez's son also joined the litigation individually and as next friend of their minor child.

**3.** The 1995 version of Chapter 33 applies to all causes of action that accrued on or after September 1, 1996, *see* Act of May 8, 1995,

74th Leg., R.S., ch. 136, § 3, 1995 Tex. Gen. Laws 971,976, but the 2003 version governs all cases filed on or after July 1, 2003, *see* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 23.02(c), 2003 Tex. Gen. Laws 847, 899.

from Chapter 33 when it replaced its comparative responsibility scheme, adopted in 1987, with proportionate responsibility in 1995. Garza's argument rests on the deletion of a previous reference to implied warranty in the 1995 amendments. The 1987 version had expressly provided for the apportionment of responsibility in negligence, strict liability, and UCC article 2 breach of warranty claims when the damages sought were for personal injury, death, or property damage.[4] *See* Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 2.04, 1987 Tex. Gen. Laws 37, 40 (codified as amended at Tex. Civ. Prac. & Rem. Code § 33.001(b) (1987)). The 1995 amendments, however, deleted mention of specific theories of liability, providing instead that the chapter should apply *"to any cause of action based on tort* in which a defendant, settling person, or responsible third party is found responsible for a percentage of the harm for which relief is sought." *See* Act of May 8, 1995, 74th Leg., R. S., ch. 136, § 1, 1995 Tex. Gen. Laws 971, 971 (codified as amended at Tex. Civ. Prac. & Rem.Code § 33.002(a) (1995)) (emphasis added). Thus, Garza argues that a breach of implied warranty claim is not a "cause of action based on tort."

Contrary to Garza's argument, however, there is no indication that the Legislature intended to restrict the scope of Chapter 33 by explicitly removing implied warranties. On the contrary, the 1995 amendments expanded the chapter's scope.

Whereas the 1987 version had expressly excluded intentional torts, the 1995 amendments removed that exclusion. *Id.* And although the 1995 version ceased to identify specific liability theories such as negligence, products liability, and breach of implied warranty, it is nevertheless clear from the statute as a whole that the Legislature intended for Chapter 33 to continue to cover these claims under its broad pronouncement that "this chapter applies to *any* cause of action based on tort." *Id.* (emphasis added).

■ Garza's argument rests on the dubious proposition that breach of implied warranty is not, or can never be, "a cause of action based on tort." This, of course, is contrary to Texas law. We have often recognized that "[i]mplied warranties are created by operation of law and are grounded more in tort than in contract." *La Sara Grain Co. v. First Nat'l Bank,* 673 S.W.2d 558, 565 (Tex.1984); *see also Rocky Mountain Helicopters, Inc. v. Lubbock County Hosp. Dist.,* 987 S.W.2d 50, 52 (Tex.1998); *Melody Home Mfg. Co. v. Barnes,* 741 S.W.2d 349, 352 (Tex.1987); *Garcia v. Tex. Instruments, Inc.,* 610 S.W.2d 456, 462–63 (Tex.1980); *Humber v. Morton,* 426 S.W.2d 554, 556 (Tex.1968). Conceptually, the breach of an implied warranty can either be in contract or in tort depending on the circumstances. As Dean Prosser observed long ago, this area of the law is complicated "by the peculiar

4. Following the passage of the 1987 version of Chapter 33, section 33.001 read in pertinent part as follows:

(a) In an action to recover damages for negligence resulting in personal injury, property damage, or death or an action for products liability grounded in negligence, a claimant may recover damages only if his percentage of responsibility is less than or equal to 50 percent.

(b) In an action to recover damages for personal injury, property damages, or death in which at least one defendant is found liable on a basis of strict tort liability, strict products liability, or *breach of warranty under chapter 2, Business & Commerce Code,* a claimant may recover damages only if his percentage of responsibility is less than 60 percent.

Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 2.04 (codified as amended in Tex. Civ. Prac. & Rem.Code § 33.001(a)-(b) (1987)) (emphasis added).

and uncertain nature and character of warranty, a freak hybrid born of the illicit intercourse of tort and contract." William L. Prosser, *The Assault Upon the Citadel (Strict Liability to the Consumer)*, 69 YALE L.J. 1099, 1126 (1960). The precise nature of the claim is ordinarily identified by examining the damages alleged: when the damages are purely economic, the claim sounds in contract, *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex. 1991); *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex.1986); but a breach of implied warranty claim alleging damages for death or personal injury sounds in tort, *see Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 664 (Tex.1999); WILLIAM POWERS, JR., TEXAS PRODUCTS LIABILITY LAW § 1.02, at 1–1 (2d ed.1994).

 Apart from the common law's tendency to equate implied warranty with tort, an examination of Chapter 33 as a whole confirms that the Legislature did not intend to exclude breach of implied warranty claims from its apportionment scheme. *See* TEX. GOV'T CODE § 312.005 (stating that courts must look at legislative intent in interpreting a statute). Although the 1995 statute does not define the term "tort," its meaning is nevertheless clear from section 33.003, which explains how the percentage of responsibility is determined. *See id.* § 311.011(a) (noting that words and phrases in a statute must be read in context). This section states:

> The trier of fact, *as to each cause of action asserted,* shall determine the percentage of responsibility, stated in whole numbers, for the following persons with respect to each person's causing or contributing to cause in any way the harm for which recovery of damages is sought, *whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of these ....*

*See* Act of May 8, 1995, 74th Leg., R. S., ch. 136, § 1, 1995 Tex. Gen. Laws 971, 972 (codified as amended at TEX. CIV. PRAC. & REM.CODE § 33.003 (1995)) (emphasis added). This language is quite similar to the 1987 statute's reference to negligence, products liability, and breach of implied warranty resulting in personal injury, death, or property damage. *See* Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 2.03, 1987 Tex. Gen. Laws 37, 40 (codified as amended at TEX. CIV. PRAC. & REM. CODE § 33.001(b) (1987)). The language "other conduct or activity that violates an applicable legal standard" is different but clearly broad enough to include the breach of an implied warranty under UCC article 2. Reading the statute as a whole, section 33.003 reveals that a "cause of action based on tort" includes negligence, products liability, and any other conduct that violates an applicable legal standard, such as the tort aspect of an implied warranty. And, if Chapter 33 applies to product liability claims, as it clearly does, it also follows that this chapter applies to implied warranties because a claim for implied warranty is one basis for a products liability action. *See* TEX. CIV. PRAC. & REM.CODE § 82.001(2) (providing that a products liability claim for personal injury, death, or property damage is based in strict tort liability, negligence, misrepresentation, and breach of express or implied warranty).

Additionally, the chapter's definition of "toxic tort," as amended in 1995, indicates that the Legislature did not intend to exclude implied warranty claims. *See* Act of May 8, 1995, 74th Leg., R. S., ch. 136, § 1, 1995 Tex. Gen. Laws 971, 973 (codified as amended at TEX. CIV. PRAC. & REM.CODE

§ 33.011(7) (1995)), *repealed by* Act of June 2, 2003, 78th Leg., R. S., ch. 204, § 4.10(3), 2003 Tex. Gen. Laws 847, 859. The 1995 version of Chapter 33 provided for joint and several liability for any cause of action if "the claimant's personal injury, property damage, death, or other harm resulted from *toxic tort.*" *See* Act of May 8, 1995, 74th Leg., R.S., ch. 136, § 1, 1995 Tex. Gen. Laws 971, 973 (codified as amended at TEX. CIV. PRAC. & REM.CODE § 33.011(7) (1995)) (emphasis added). Because "toxic tort" was defined to include a cause of action "for breach of implied warranty under Chapter 2 [of the] Business & Commerce Code," it is apparent that the Legislature did not intend to exclude implied warranty claims from Chapter 33 when it amended the chapter in 1995. *See id.*

## B

Garza also contends that Chapter 33 should not apply to her implied warranty claim under article 2 of the Texas UCC because Chapter 33 is incompatible with the integrated nature and purpose of article 2. The court of appeals agreed, concluding that because of article 2's "complete, integrated legal framework governing sales, . . . any extension of chapter 33's proportionate responsibility scheme could potentially disrupt and override 'the UCC's express purpose of furthering uniformity among the states.'" 176 S.W.3d

---

at 633 (quoting *Sw. Bank,* 149 S.W.3d at 110–11).

In *Southwest Bank,* a case involving negotiable instruments under UCC article 3, we considered whether a defendant in a UCC-based conversion action [5] could join a responsible third party as authorized by Chapter 33. 149 S.W.3d at 105. We declined to apply Chapter 33 to the conversion claims, concluding that article 3 contained "its own loss allocation scheme uniquely applicable to conversion claims involving negotiable instruments." *Id.* at 111; *see* TEX. BUS. & COM.CODE § 3.406 cmt.4 (noting that section 3.406(b) of the UCC ". . . adopts a concept of comparative negligence"). To do otherwise, we said, would likely "disrupt the UCC's carefully allocated liability scheme" under article 3. *Sw. Bank,* 149 S.W.3d at 108.

Unlike UCC article 3, article 2 does not undertake a comprehensive fault scheme. As applied here, article 2 merely provides that a party may recover consequential damages for "injury to person or property proximately resulting from any breach of warranty." TEX. BUS. & COMM.CODE § 2.715(b)(2). Although a UCC comment indicates that the buyer's conduct may affect the recovery of consequential damages under an implied warranty cause of action,[6] article 2 does not apportion liability under these circumstances. *See id.* § 2.715 cmt.5 (noting that "the question of 'proximate' cause turns on whether it was reasonable for the buyer to use the goods

---

5. In *Southwest Bank,* we assumed, without deciding, that a UCC conversion claim was a "tort" under Chapter 33. 149 S.W.3d at 107 n. 6.

6. Comment 5 states:
Subsection (2)(b) states the usual rule as to breach of warranty, allowing recovery for injuries "proximately" resulting from the breach. Where the injury involved follows the use of goods without discovery of the defect causing the damage, *the question of*

---

*"proximate" cause turns on whether it was reasonable for the buyer to use the goods without such inspection as would have revealed the defects.* If it was not reasonable for him to do so, or if he did in fact discover the defect prior to his use, the injury would not proximately result from the breach of warranty.
TEX. BUS. & COM.CODE § 2.715 cmt.5 (emphasis added).

without such inspection as would have revealed the defects"). Thus, this Court, and many others,[7] have historically included breach of implied warranty claims as part of the mix when comparing fault in tort-based litigation. *See Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 428 (Tex. 1984) (allowing "comparison of plaintiff's conduct ... with the conduct or product of a defendant, [regardless of] whether the suit combine[d] crashworthiness or other theories of strict products liability, *breach of warranty*, or negligence"); *see also Signal Oil & Gas Co. v. Universal Oil Prods.*, 572 S.W.2d 320, 329 (Tex.1978) (finding that where both the unsuitable product and the buyer's negligence are found to be proximate causes of the damage in an implied warranty claim, "the buyer may not recover consequential damages to the extent that the buyer's negligence or fault was a concurring proximate cause of such damages").

## III

■ Having concluded that Chapter 33 continued to apply to implied warranty claims after the 1995 amendments, we apply its proportionate responsibility scheme to the jury's verdict in this case. Chapter 33 provides that "a claimant may not recover damages if his percentage of responsibility is greater than 50 percent." *See* Act of May 8, 1995, 74th Leg., R.S., ch. 136, § 1, 1995 Tex. Gen. Laws 971, 971 (codified as amended at TEX. CIV. PRAC. & REM.CODE § 33.001 (1995)). When the claim involves death, as here, "claimant" is defined to include not only the party seeking damages, but also the decedent. *Id.* § 33.011(1). Because the jury found the decedent, Montez, negligent and apportioned him sixty percent of the responsibility for his death, his contributory negligence bars recovery in this case. *Id.* § 33.001.

7. *Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 517–18 (6th Cir.1998) (interpreting Kentucky law that comparative fault applies to products liability actions based on breach of warranty); *Merritt Logan, Inc. v. Fleming Cos.*, 901 F.2d 349, 365 (3d Cir.1990) (construing New Jersey statutes to authorize consideration of comparative negligence in assessing damages for breach of warranty); *Sheldon v. Unit Rig & Equip. Co.*, 797 F.2d 883, 887–88 (10th Cir.1986) (finding that the Wyoming comparative negligence statute extends to claims for breach of warranty although the statute merely refers to an action "to recover damages for negligence"); *Loughridge v. Goodyear Tire & Rubber Co.*, 207 F.Supp.2d 1187, 1191–92 (D.Colo.2002) (noting that products liability claims brought under breach of warranty are subject to comparative fault); *West v. Caterpillar Tractor, Co.*, 336 So.2d 80, 92 (Fla.1976) (interpreting Florida application of comparative negligence principles to products liability claims under breach of warranty theory); *Flom v. Stahly*, 569 N.W.2d 135, 140–41 (Iowa 1997) (interpreting the Iowa comparative fault statute to apply to breach of implied warranty claims for personal injury or property damage); *Ken-*

*nedy v. Sawyer*, 228 Kan. 439, 618 P.2d 788, 798 (1980) (stating that the doctrine of comparative fault or causation applies to implied warranty claims in products liability cases); *In re Certified Questions*, 416 Mich. 558, 331 N.W.2d 456, 461 (1982) (applying Michigan pure comparative negligence statute to breach of warranty); *Lesmeister v. Dilly*, 330 N.W.2d 95, 101 (Minn.1983) (stating the Minnesota comparative fault statute expressly includes breach of warranty claims); *Champagne v. United States*, 513 N.W.2d 75, 79 (N.D.1994) (indicating that the North Dakota comparative fault statute extends to breach of warranty claims for product defect); *Fiske v. MacGregor*, 464 A.2d 719, 727 (R.I.1983) (holding that the Rhode Island comparative negligence statute extends to breach of implied warranty actions); *Owens v. Truckstops of Am., Inc.* 915 S.W.2d 420, 434 (Tenn.1996) (noting that the Tennessee comparative fault scheme should also apply to breach of implied warranties); *Jacobsen Constr. Co. v. Structo–Lite Eng'g, Inc.*, 619 P.2d 306, 312 (Utah 1980) (maintaining that the Utah comparative negligence principle is a valid defense to breach of warranty actions).

\* \* \*

The court of appeals' judgment is accordingly reversed, and judgment is rendered that claimants take nothing.

Chief Justice JEFFERSON filed a concurring opinion in which Justice O'NEILL joined.

Chief Justice JEFFERSON, joined by Justice O'NEILL, concurring.

I agree that chapter 33's proportionate responsibility scheme applies to a UCC-based implied warranty claim seeking damages for death or personal injury. I write separately to explore the proper submission of that issue.

This is not our first occasion to consider whether comparative responsibility principles apply to UCC-based implied warranty claims. In *Signal Oil & Gas Co. v. Universal Oil Products*, 545 S.W.2d 907, 910 (Tex. App.-Beaumont 1977, writ granted), the court of appeals held that, under traditional contributory negligence principles, any negligence on the buyer's [1] part would bar all recovery on a UCC-based implied warranty claim. We disagreed, based on the statute's language:

> The draftsmen of the Code obviously felt that consideration should be given to the buyer's fault or negligence when determining recovery of consequential damages for a breach of implied warranty. Section 2.714 of the Code establishes the measure of damages for a breach of warranty. Section (c) thereunder states, "(i)n a proper case any incidental and consequential damages" may also be recovered. Section 2.715 defines "conse-

quential damages" as including "injury to person or property proximately resulting from any breach of warranty." (Emphasis added.) In Comment 5 to Section 2.715 the draftsmen of the Code provided the following guidelines on proximate causation:

> "(T)he question of 'proximate' cause turns on whether it was *reasonable* for the buyer to use the goods without such inspection as would have revealed the defects. If it was not *reasonable* for him to do so, or if he did in fact discover the defect prior to his use, the injury would not proximately result from the breach of warranty." (Emphasis added.)

Comment 5 clearly indicates that the buyer's conduct may affect his recovery of consequential damages under an implied warranty cause of action. In addition, Comment 5 clearly speaks in terms of a "reasonable use" standard in examining the buyer's conduct. Such a reasonable use standard is normally associated with theories of negligence. *Rourke v. Garza*, 530 S.W.2d 794 (Tex. 1975). However, the Code does not state that such buyer's negligence or fault will totally bar recovery as does contributory negligence under traditional tort principles. Rather, the Code and comments thereunder indicate that the buyer's negligence or fault is central to the issue of proximate causation in awarding consequential damages. *Dallison v. Sears, Roebuck and Co.*, 313 F.2d 343 (10th Cir.1962); *Rasmus v. A.O. Smith Corporation*, 158 F.Supp. 70 (D.Iowa 1958).

---

1. For ease of reference, I refer to the "buyer" but recognize (as the parties do) the UCC's categorization of an implied warranty of fitness in "any transaction, regardless of form, that creates a lease of goods." TEX. BUS. & COM.CODE § 2A.102. The parties dispute whether the UCC applies to the implied war- ranty claim at issue here. We need not engage in that debate today, however. Assuming the agreement involves a lease of goods and that an end user has an implied warranty claim in the absence of privity, the jury's 60% negligence finding as to Montez bars that claim, as demonstrated below.

*Signal Oil & Gas Co. v. Universal Oil Prods.*, 572 S.W.2d 320, 327–28 (Tex.1978). We recognized that "[t]he seller should only be held liable for that portion of the consequential damages caused by the breach of implied warranty," and thus "the buyer may not recover consequential damages to the extent that the buyer's negligence or fault was a concurring proximate cause of such damages." *Id.* at 329. We distinguished the UCC scheme from the comparative negligence statute in effect at the time, noting that "[u]nlike comparative negligence, a buyer is entitled to recover that portion of the damages caused by the unsuitable product, even if the buyer's negligence or fault constitutes a greater cause of the damages than the seller's breach." *Id.* (citing Tex.Rev.Civ. Stat. art. 2212a (repealed 1985)).

Nine years after *Signal Oil*, the Legislature amended the comparative negligence statute and incorporated a 60% comparative responsibility bar in personal injury, property damage, and death cases in which at least one defendant was liable under a UCC chapter 2 breach of warranty theory. *See* Act of Sept. 2, 1987, 70th Leg., 1st C. S., ch. 2, § 2.04, 1987 Tex. Gen. Laws 40, 40. While the 1995 statutory revisions removed this language, they included instead a 51% bar for all causes of action "based on tort." Act of Sept. 1, 1995, 74th Leg., ch. 136, § 1, 1995 Tex. Gen. Laws 855, 859, *amended by* Act of Sept. 1, 2003, 78th Leg., ch. 204, §§ 4.01, 4.10(1), 2003 Tex. Gen. Laws 855, 859. Leading commentators recognize that state comparative fault schemes generally have been applied to UCC-based implied warranty claims and that some sort of comparative fault system should apply:

> In the long run, we suspect that ideas of comparative fault will inevitably be the rule and not the exception—at least in personal injury cases. It probably makes little sense to apply comparative

fault to the negligence claim and fail to do that in a warranty or strict tort claim tried before the same jury, in the same courtroom simultaneously.

James J. White & Robert S. Summers, Uniform Commercial Code § 11–8, at 760 (5th ed.2006). Moreover, while UCC section 2.715 discusses the buyer's negligence and its effect on an implied warranty recovery, the statute's provisions stand in contrast to the "comprehensive legislative fault scheme singularly applicable to claims involving negotiable instruments" in revised article 3 of the UCC. *See Sw. Bank v. Info. Support Concepts, Inc.*, 149 S.W.3d 104, 111 (Tex.2004) (discussing revised article 3 and noting that it included detailed comparative negligence provisions that applied to some, but not all, conversion claims); *see also* Tex. Bus. & Com.Code § 2A.520(b)(2) (applying section 2.715's definition of consequential damages to lease-based claims). Chapter 33's application here would not, therefore, "ignore the UCC itself and thwart its underlying purpose." *Sw. Bank*, 149 S.W.3d at 111. Nor does this case involve a vicarious-liability statute that removes from consideration the actual conduct of the alleged tortfeasor, making it difficult to harmonize with chapter 33. *See F.F.P. Operating Partners v. Duenez*, 237 S.W.3d 680, 695 (Tex. 2007) (Jefferson, C.J., dissenting). Thus, I agree with the Court that Garza's implied warranty claim qualifies as a cause of action based on tort and is therefore subject to Chapter 33's proportionate responsibility scheme.

But chapter 33 requires a finding of proportionate responsibility on each claim: "The trier of fact, *as to each cause of action asserted*, shall determine the percentage of responsibility, stated in whole numbers, for the following persons with respect to each person's causing or contributing to cause in any way the harm for which recovery of damages is sought, whether by negligent act or omission, by

any defective or unreasonably dangerous product, by other conduct or activity that violates an applicable legal standard, *or by any combination of these . . . .*"

TEX. CIV. PRAC. & REM.CODE § 33.003 (emphasis added).

Here, the apportionment question immediately followed the negligence question, and was directed only to it:

> If you have answered "YES" to Question No. 1 [the negligence question], for more than one of those named below, then answer the following question. . . .
>
> The percentages you find must total 100 percent. The negligence attributable to any one named below is not necessarily measured by the number of acts or omissions found.

### QUESTION NO. 2

> What percentage of the negligence that caused the death of Rolando Montez do your [sic] find to be attributable to each of those found by you, in your answer to Question No. 1?

| | |
|---|---|
| A. J.C.W. Electronics, Inc. | 15% |
| B. The City of Port Isabel | 25% |
| C. Quadrum Telecommunications, Inc. | ----- |
| D. Rolando Montez | 60% |
| TOTAL | 100% |

The breach of implied warranty question was Question No. 9, and there was no apportionment question asking about percentages of responsibility regarding that claim. Nonetheless, the only way a buyer's fault may be compared with a seller's for such a claim is to examine the nature of the liability attributable to each. A seller will be liable if, as the jury here found, its product breaches an implied warranty and that breach proximately caused the buyer's damages. By contrast, the buyer's fault cannot be couched in terms of a breach of warranty. As we recognized in *Signal Oil*, it is the buyer's negligence that will impact his recovery in a UCC-based breach of implied warranty claim. *Signal Oil*, 572 S.W.2d at 328 (noting that "Comment 5 clearly speaks in terms of a 'reasonable use' standard in examining the buyer's conduct" and "[s]uch a reasonable use standard is normally associated with theories of negligence"). A buyer has not breached an implied warranty, and a question inquiring about the buyer's breach would be nonsensical. Instead, a buyer's negligence is the relevant inquiry when apportioning fault for such a claim. While the jury found that JCW breached an implied warranty, it also found Rolando Montez negligent and apportioned sixty percent of the negligence to him. Under chapter 33, Montez's comparative negligence bars Garza's claim. TEX. CIV. PRAC. & REM.CODE § 33.001.

I would hold that a UCC-based implied warranty claim seeking personal injury damages should be submitted to the jury with an apportionment question inquiring about each actor's "percentage of responsibility," rather than negligence, because that would include both the seller's breach of warranty and the buyer's negligence.[2] *See Brown v. Edwards Transfer Co.*, 764 S.W.2d 220, 224 n. 2 (Tex.1988). Because the jury was asked about Montez's negligence, however, and because its finding bars Montez's claim, JCW's percentage of responsibility for damages caused by the breach of implied warranty is immaterial. For these reasons, I concur in the Court's judgment.

---

2. Additionally, it seems to me that, in most cases, the parties could agree to submit a single apportionment question to cover multiple theories of liability, provided that each theory has a common factual basis to which the questions refer.