**Erick LOPEZ, Appellant**

v.

**Adam HURON d/b/a Adam's Mexican
Food Products, Appellee**

**No. 04–15–00327–CV**

Court of Appeals of Texas,
San Antonio.

Delivered and Filed: February 3, 2016

---

518

Jeremy Cook, Downs Stanford, P.C., Dallas, TX, for Appellant.

Paul T. Curl, Brittany Weil, Curl & Stahl, A Professional Corporation, San Antonio, TX, for Appellee.

Sitting: Sandee Bryan Marion, Chief Justice, Rebeca C. Martinez, Justice, Jason Pulliam, Justice

## OPINION

Opinion by: Sandee Bryan Marion, Chief Justice

Erick Lopez appeals a judgment entered against him based on a jury's findings that he breached implied warranties relating to plastic bags he sold to Adam Huron d/b/a Adam's Mexican Food Products.[1] Lopez presents three issues on appeal asserting the trial court erred by: (1) entering judgment against him because no jury finding was requested or made regarding any statutory exception a claimant is required to prove to hold a nonmanufacturing seller liable; (2) ordering him to pay attorney's fees if the trial court erred in entering judgment against him; and (3) ordering him to pay Huron attorney's fees for the

defense of Lopez's counterclaims. We affirm the trial court's judgment.

### BACKGROUND

Huron makes and sells masa which is packaged in plastic bags. In 2010, Lopez agreed to supply Huron with plastic bags suitable for packaging the masa. Lopez ordered the plastic bags from A.J. Plastics, Inc. which shipped the plastic bags directly to Huron.

In November of 2011, one of Huron's customers advised Huron that a shipment of 1,695 cases of masa was defective because the seams on the plastic bags containing the masa were breaking. Huron's customer paid $19,373.85 for the product. Huron's customer returned the cases, and the packaged masa was spoiled. Huron shipped his customer replacement cases packaged in plastic bags from a different supplier.[2]

Huron sued Lopez and A.J. Plastics. Lopez asserted counterclaims against Huron, alleging Huron agreed to pay Lopez's expenses and a fee for assisting Huron in locating the plastic bags, providing artwork and plates for making the plastic bags, and obtaining a patent for the bags.

A jury found Lopez breached the implied warranties of merchantability and fitness for a particular purpose. The jury also found A.J. Plastics breached the implied warranty of merchantability. The jury awarded Huron $16,199.07 in damages, and apportioned twenty percent of the responsibility for the damages to Lopez and eighty percent of the responsibility to A.J. Plastics. The jury did not find Huron liable on any of Lopez's counterclaims. Finally, the jury awarded Huron attorney's fees for prevailing on his claims

---

1. Judgment was also entered against the manufacturer of the bags, A.J. Plastics, Inc.; however, A.J. Plastics did not appeal.

2. After July of 2011, Huron began purchasing the plastic bags from a different supplier.

and for successfully defending against Lopez's counterclaims. The trial court entered judgment based on the jury's findings. Lopez appeals.

### SECTION 82.003: LIABILITY OF NONMANUFACTURING SELLERS

█ In his first issue, Lopez contends the trial court erred in entering judgment against him because no jury finding was requested or made regarding any statutory exception a claimant is required to prove to hold a nonmanufacturing seller liable under section 82.003 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 82.003 (West 2011).[3] In response, Huron contends: (1) he did not assert a products liability claim to which the statute is applicable; (2) Lopez waived this issue by not making any reference to a products liability claim and its requirements in the trial court; and (3) if Huron was required to prove a statutory exception, the record contains some evidence to support such an exception; therefore, the exception can be deemed to be found under Rule 279 of the Texas Rules of Civil Procedure. In his reply brief, as clarified during oral argument, Lopez responds a nonmanufacturing seller's immunity under section 82.003 is not limited to products liability actions.

#### A. Products Liability Action

█ We disagree with Lopez's contention that the application of section 82.003 is not limited to products liability actions.

As this court has stated, "Chapter 82 of the [Texas] Civil Practice and Remedies Code addresses products liability." *Fields v. Klatt Hardware & Lumber, Inc.*, 374 S.W.3d 543, 546 (Tex.App.–San Antonio 2012, no pet.). Not only is chapter 82 entitled "Products Liability," it is contained in Title 4 of the Texas Civil Practice and Remedies Code entitled, "Liability in Tort." TEX. GOV'T CODE ANN. § 311.023(7) (West 2013) (providing courts may consider title in construing statute); *see also Moore v. Trevino*, 94 S.W.3d 723, 726 (Tex. App.–San Antonio 2002, pet. denied) (noting title of statute "may be considered as a guide to showing legislative intent"). Although we acknowledge section 82.003 does not expressly refer to the defined term "products liability action," we believe the Legislature's intent is clear given the placement of section 82.003 in Chapter 82 and in Title 4 of the Texas Civil Practice and Remedies Code. Therefore, we turn our attention to whether Huron's breach of implied warranty claim is a products liability action as defined in section 82.001(2).

█ The term "products liability action" is statutorily defined as:

> any action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty,

---

**3.** Section 82.003 provides "[a] seller that did not manufacture a product is not liable for harm caused to the claimant by that product unless the claimant proves": (1) the seller participated in the product's design; (2) the seller altered or modified the product and the harm resulted from the alteration or modification; (3) the seller installed the product and the harm resulted from the installation; (4) the harm resulted from the inadequacy of a warning or instruction over which the seller exercised substantial control; (5) the harm resulted from a false express factual representation the seller made about the product; (6) the harm resulted from a defect of which the seller had actual knowledge; or (7) the manufacturer of the product is insolvent or not subject to a Texas court's jurisdiction. TEX. CIV. PRAC. & REM CODE ANN. § 82.003 (West 2011).

or any other theory or combination of theories.

*Id.* at § 82.001(2). Determining whether a claim is encompassed by the statutory definition of "products liability action" is a matter of statutory construction which we review de novo. *Valdez v. Hollenbeck,* 465 S.W.3d 217, 227 (Tex.2015). In construing a statute, a court may consider the common law, and "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, [must] be construed accordingly. Tex. Gov't Code Ann. § 311.011(b), 311.023(4) (West 2013).

Lopez contends Huron's claim for breach of implied warranty is a products liability action because the statutory definition expressly encompasses breach of implied warranty claims. Huron counters that not every breach of implied warranty claim is encompassed within the definition of a products liability action because a products liability action as defined must seek the recovery of damages "arising out of personal injury, death, or property damage." In essence, Huron argues the phrase "arising out of personal injury, death, or property damage" has acquired a particular meaning as it relates to breach of implied warranty and product liability claims, and that meaning must be applied in determining whether Huron's breach of implied warranty claim falls within the statutory definition of a products liability action. Huron contends his breach of implied warranty claim is not a products liability action because his claim sounds in contract not in tort.

B. Contract v. Tort and Economic Loss Rule

■ The law recognizes a distinction exists between products liability claims and contractual claims. *See East River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 870–71, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986) (noting "need to keep products liability and contract law in separate spheres"); *Mills v. Warner–Lambert Co.,* 581 F.Supp.2d 772, 792–93 (E.D.Tex. 2008) (noting "cases suggest that Texas law does not define product liability to encompass contract-based claims"); *Nobility Homes of Tex., Inc. v. Shivers,* 557 S.W.2d 77, 79–80 (Tex.1977) (noting law has drawn a distinction "between tort recovery for physical injuries and warranty recovery for economic loss" and "distinction between physical harm, or damage, to property and commercial loss") (internal citations omitted). In Texas, the perimeters between these two types of claims is governed by the economic loss rule. *Sharyland Water Supply Corp. v. City of Alton,* 354 S.W.3d 407, 415 (Tex.2011). "The economic loss rule applies when losses from an occurrence arise from failure of a product and the damage or loss is limited to the product itself." *Equistar Chemicals, L.P. v. Dresser–Rand Co.,* 240 S.W.3d 864, 867 (Tex.2007). "In such cases, recovery is generally limited to remedies grounded in contract (or contract-based statutory remedies), rather than tort." *Sharyland Water Supply Corp.,* 354 S.W.3d at 415. "The rule does not preclude tort recovery if a defective product causes physical harm to the ultimate user or consumer or other property of the user or consumer in addition to causing damage to the product itself." *Equistar Chemicals, L.P.,* 240 S.W.3d at 867.

■ The same rule applies in determining whether an implied warranty claim is a contractual claim or a tort claim. *JCW Electronics, Inc. v. Garza,* 257 S.W.3d 701, 704–05 (Tex.2008). Acknowledging a breach of implied warranty claim can be either a contract or tort claim, the Texas Supreme Court has held the nature of the claim is determined by examining the alleged damages. *Id.* "[W]hen the damages

are purely economic, the claim sounds in contract." *Id.* at 705. "[B]ut a breach of implied warranty claim alleging damages for death or personal injury sounds in tort." *Id.*

The statutory definition of a "products liability action" recognizes that the "recovery of damages arising out of personal injury, death, or property damage" has a particular meaning in the law which must be applied in construing the statute. Tex. Gov't Code. §§ 311.011(b), 311.023(4). By limiting the damages recoverable in a "products liability action" in this manner, the Legislature incorporated the concept of the economic loss rule into the definition. Accordingly, the economic loss rule is applicable in determining whether a breach of implied warranty claim falls within the definition of a products liability action under section 82.001. *See Mills,* 581 F.Supp.2d at 792–93 (holding plaintiffs' claims alleging purely economic damages for breach of the implied warranty of merchantability were not product liability actions "[b]ased on the definition of 'product liability action' in Section 82.001(2) of the Texas Civil Practice and Remedies Code").

C. Defective Product v. "Other Property"

■ An implied warranty claim is a contractual claim if the only injury is to the defective product itself. *Mid Continent Aircraft Corp. v. Curry Cty. Spraying Serv., Inc.,* 572 S.W.2d 308, 313 (Tex.1978). In this case, Lopez contends Huron alleged damage to "other property," namely the masa packaged inside the plastics bags that spoiled. *See Equistar Chemicals, L.P.,* 240 S.W.3d at 867 (noting tort recovery permissible if a defective product damages "other property").

"Texas courts have rejected the argument that damage to a finished product caused by a defective component part constitutes damage to 'other property,' so as to permit tort recovery for damage to the finished product." *Pugh v. Gen. Terrazzo Supplies, Inc.,* 243 S.W.3d 84, 92 (Tex. App.–Houston [1st Dist.] 2007, pet. denied). The question is whether the plastic bags should be considered a component part of the packaged masa so that the damage to the masa is not damage to "other property."

The following cases describe what is and is not considered "other property."

1. *Helen of Troy, L.P. v. Zotos Corp.,* 511 F.Supp.2d 703 (W.D.Tex.2006).

Helen of Troy, L.P. sold Straight to the Maxx (STTM) kits consisting of a cardboard package that contained an instructional videotape, a flat iron, a mirror, a comb, and five plastic bottles containing various solutions. 511 F.Supp.2d at 707. Helen of Troy contracted with Zotos Corp. to supply the plastic bottles filled with the various solutions. *Id.* The plastic bottles leaked, and Helen of Troy sued Zotos under various liability theories. *Id.* at 720.

In addressing Helen of Troy's tort claims, the district court noted a plaintiff alleging a products liability claim under Texas law must show that the defective product caused physical harm or injury to himself or his property, and the damage "must be to property other than the product itself." *Id.* at 721. The court concluded the plaintiff was not bringing claims based on damage to persons or other property, reasoning:

The only property damage alleged by Plaintiff is damage to the STTM kits, which contained the plastic bottles which Zotos provided as well as a videotape, a flat iron, a hairbrush, and other components. The Texas Supreme Court has not yet addressed the issue of whether a product, containing components manufactured by a defendant and assembled by a plaintiff, would be considered "oth-

er property," thus allowing a plaintiff to recover for economic loss to the whole product in a negligence or strict liability action. The Court finds the reasoning of other federal courts that have considered the issue to be persuasive, and concludes that the Texas Supreme Court would adopt the position that such a product is not other property. *See Sanitarios Lamosa, S.A. de C.V. v. DBHL, Inc.*, No. Civ. A. H–04–22973, 2005 WL 2405923 at *6 (S.D.Tex. Sept. 29, 2005) (holding in a tort action brought by a toilet seller against a ballcock manufacturer that "[b]ecause the toilets are the completed product, neither damage to the toilet tank nor to the toilet itself constitutes damage to 'other property' under Texas law"); *Alcan Aluminum Corp. v. BASF Corp.*, 133 F.Supp.2d 482, 505 (N.D.Tex.2001) ("Texas courts would ... characterize damage to a product caused by a defective component as 'economic loss' rather than damage to 'other property,' and therefore not subject to recovery under a negligence theory." The court reasoned that because damage to the finished product was foreseeable, the parties were "capable of protecting themselves in the contracting process.").

In this case, the STTM kits were the completed product into which Plaintiff packaged the HSS bottles. Zotos knew that the HSS bottles would be components of kits assembled by Plaintiff. Plaintiff does not claim any damage to any property other than the STTM kits. Furthermore, Plaintiff's only claimed injury is economic loss resulting from the placement of the defective bottles in the STTM kits. Thus, the rationale of the economic loss rule, distinguishing between physical injury to other property and person on the one hand, and product performance on the other, is particularly applicable to Plaintiff's claims.

*Id.* at 721–22. The court concluded the plaintiffs' tort claims were barred by the economic loss rule. *Id.* at 723.

2. *Int'l Flavors & Fragrances Inc. v. McCormick & Co.*, 575 F.Supp.2d 654 (D.N.J.2008).

McCormick & Company, Inc. supplied paprika to International Flavors & Fragrances, Inc. ("IFF"). 575 F.Supp.2d at 655. IFF discovered a shipment of the paprika it received from McCormick was infested with beetles. *Id.* IFF had used a portion of the shipment to make barbeque seasoning. *Id.* As a result, the barbeque seasoning was defective, and IFF incurred significant expense attempting to supply a customer with barbeque seasoning from an alternate source. *Id.* IFF sued McCormick, asserting claims for breach of express and implied warranty and products liability. *Id.* at 656.

Because IFF had manufacturing facilities in both Texas and New Jersey, the district court noted both states' laws were implicated by IFF's products liability claim. *Id.* at 657. The court further noted under the laws of both states, "a plaintiff cannot bring a product liability claim for damage 'to the product itself.'" *Id.* at 658. Instead, under Texas law, the damage "'must be to property *other than the product itself.*'" *Id.* (citing *Helen of Troy, L.P.*, 511 F.Supp.2d at 721).

Although IFF conceded it could not bring a products liability claim based on the damaged paprika, it argued the barbeque seasoning that incorporated the contaminated paprika and was damaged by it was "property other than the product itself." *Id.* The district court examined several cases from various jurisdictions that concluded "damage done to a final product by a defective component or ingredient does not constitute damage to property

'other than the product itself.'" *Id.* at 662.

A few of the cases examined by the district court used the commercial context of the transaction to conclude that recovery was based in contract and not in tort. For example, in *In re Merritt Logan, Inc.,* the plaintiff argued it could recover in tort because a defective refrigeration system caused damage to its food stocks which constituted "other property." 901 F.2d 349, 362 (3d Cir.1990). Because the damage to the food stocks "occurred at the core of a commercial transaction," the court concluded the damages were compensable only in contract. *Id.* In a second case examined by the district court, a defective chemical dispensing system for commercial washers caused damage to the plaintiff's linens. *Palmetto Linen Serv., Inc. v. U.N.X., Inc.,* 205 F.3d 126, 128 (4th Cir.2000). In its subsequent lawsuit, the plaintiff alleged tort claims asserting the linens were "other property." *Id.* at 129. The Fourth Circuit rejected the argument, reasoning:

> Although the economic loss rule generally does not apply where other property damage is proven, courts have tended to focus on the circumstances and context giving rise to the injury in determining whether alleged losses qualify as "other property" damage. Specifically, in the context of a commercial transaction between sophisticated parties, injury to other property is not actionable in tort if the injury was or should have been reasonably contemplated by the parties to the contract. In such cases the failure of the product to perform as expected will necessarily cause damage to other property, rendering the other property damage inseparable from the defect in the product itself.

*Id.* at 129–30 (internal quotations and citations omitted).

3. *Saratoga Fishing Co. v. J.M. Martinac & Co.,* 520 U.S. 875, 117 S.Ct. 1783, 138 L.Ed.2d 76 (1997).

In *Saratoga Fishing Co.,* a component supplier provided a defective component (a hydraulic system) to a manufacturer, who incorporated it into a manufactured product (the ship). 520 U.S. at 878, 117 S.Ct. 1783. The manufacturer sold the ship to an initial user, who added extra equipment (a skiff, a fishing net, and spare parts). *Id.* at 877, 117 S.Ct. 1783. After using the ship, the initial user resold it to a subsequent user, which was the plaintiff Saratoga Fishing Co. *Id.*

The United States Supreme Court concluded tort recovery was not permitted for the damage to the ship. *Id.* at 885, 117 S.Ct. 1783. However, the added extra equipment was "other property" for which tort recovery was permissible. *Id.* at 884–85, 117 S.Ct. 1783; *see also Murray v. Ford Motor Co.,* 97 S.W.3d 888, 893 (Tex. App.–Dallas 2003, no pet.) (holding tort recovery not permissible for damage to truck which was destroyed by a fire caused by an electrical failure but was permissible for loss of "other property" in the truck at the time of the fire including clothing and tools).

E. Analysis

We conclude the plastic bags in the instant case are similar to the plastic bottles in *Helen of Troy, L.P.* In this case, Huron used the plastic bags as a component in a final product, namely the packaged masa. In the context of this commercial transaction, damage to the packaged masa could be reasonably contemplated by Huron and Lopez in the event the bags were defective. The only damages Huron alleged were for economic loss relating to the final product. Because the claim is for damage to a finished product caused by a defective component, there is no damage to "other

property." *Pugh*, 243 S.W.3d at 92. Accordingly, because Huron's claim did not seek "damages arising out of personal injury, death, or property damage" under the particular meaning that phrase has acquired, Huron's claim is not a products liability action.[4]

It is important to note that this holding does not alter Huron's recovery under the jury's findings in this case. The jury found Lopez breached an implied warranty, and Huron is entitled to recover his resulting economic loss which includes both direct and consequential loss. In this case, the damage to the masa would be considered an indirect, consequential loss. *See Nobility Homes of Tex., Inc.*, 557 S.W.2d at 78 n. 1 (summarizing distinction between direct and consequential economic loss); *see also Helen of Troy, L.P.*, 511 F.Supp.2d at 722 n. 15 (noting damages based on product returns and lost profits are consequential damages).

## ATTORNEY'S FEES

In his second issue, Lopez contends if the panel sustains his first issue, the award of attorney's fees must also be reversed because Huron would not have prevailed on his claims. Because we have overruled Lopez's first issue, we also overrule Lopez's second issue.

■ In his third issue, Lopez contends the portion of the trial court's judgment awarding Huron attorney's fees for defending against Lopez's counterclaims should be reversed because Huron did not segregate the recoverable fees from the unrecoverable fees. Huron responds that Lopez did not preserve this issue for appellate review, or, in the alternative, segregation was not required because the claim

for which attorney's fees were recoverable and the claims for which attorney's fees were not recoverable were intertwined.

■ For purposes of this opinion, we will assume, without deciding, that Lopez preserved this issue for our review. Although attorney's fees generally must be segregated, segregation is not required when discrete legal services advance both a claim on which attorney's fees are recoverable and a claim on which fees are not recoverable. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313–14 (Tex.2006).

At trial, invoices documenting the work performed by Huron's attorney were introduced into evidence. Huron's attorney, Paul Curl, testified if he multiplied the hourly rates by the total hours worked, the fees were in excess of $70,000. Curl stated, "I simply stopped calculating at that point because the fees are—the fees are out of wack [sic]," noting the total number of hours worked was then in excess of 400 hours. Curl explained the total fee was simply too high for the nature of the case and the damages being sought, so he capped the fees at a reasonable amount of $50,000, and segregated that amount between the fees for pursuing Huron's claim ($30,000) and the fees for defending against Lopez's counterclaims ($20,000). When asked if he could segregate the attorney's fees attributable to the defense of each of Lopez's separate claims, Curl responded, "In my opinion, no, again, because the facts are closely intertwined, and I believe the work required to defend each of those claims advances the defense of all other claims."

Lopez asserted counterclaims against Huron for breach of contract, quantum

---

4. Because we hold Huron's claims were not product liability claims, we do not address Huron's alternative arguments regarding waiver and deemed findings. *See* TEX. R. APP.

P. 47.1 (stating opinions should address only those issues necessary to the court's disposition).

meruit, unjust enrichment, fraud, and violations of the Theft Liability Act.[5] Each of these claims was premised on the allegation that Huron agreed to pay Lopez his expenses and a fee for locating the plastic bags, providing artwork and plates for making the plastic bags, and obtaining a patent for the bags. Under each claim the allegation was that Lopez was damaged by Huron's failure to pay him. In defending against each of these claims, Huron sought to disprove the same operative fact. In other words, Huron sought to defeat each of these claims by disproving he made any agreement or otherwise represented to Lopez that he would pay him any of the claimed expenses and fees. Accordingly, the nature of the claims supports Curl's testimony that "the work required to defend each of those claims advance[d] the defense of all other claims." Because segregation is not required when discrete legal services advance both a claim on which attorney's fees are recoverable and a claim on which fees are not recoverable, we overrule Lopez's third issue.

### Conclusion

Having overruled all of Lopez's issues, we affirm the trial court's judgment.

---

**5.** Attorney's fees were recoverable only under the Theft Liability Act claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 134.005(b) (West 2011).