**Opinion filed June 12, 2025**



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00284-CV

_____

## DANNY CAMPBELL, Appellant

## V.

## HENDERSHOT EQUIPMENT CO., INC., Appellee

**On Appeal from the 266th District Court**
**Erath County, Texas**
**Trial Court Cause No. 23CVDC-00234**

## O P I N I O N

At the heart of this matter is Appellant's argument that an equipment rental company had a duty, and violated its duty, to train and instruct on the use of rented equipment involved in his injury. Appellant Danny Campbell challenges the trial court's grant of Appellee Hendershot Equipment Co., Inc.'s combined traditional and no-evidence motion for summary judgment. On appeal, Campbell argues that

(1) the trial court erred by granting Hendershot's motion because a genuine issue of material fact exists as to Hendershot's alleged duty to train or instruct the operator of the equipment and Hendershot's alleged negligent entrustment of the equipment, and (2) the trial court abused its discretion when it sustained Hendershot's objection to a witness's deposition testimony. We affirm.

*Factual and Procedural History*

In Campbell's live pleading, he alleged that Jesse and Cora Kendrick were constructing a metal building on their property and they, and/or Cora's son, Daniel Boone, hired Brandon Hudson to help. Hudson hired Campbell to assist in the building's construction. The construction site for the metal building was near an active power line. During the construction, the Kendricks rented an overhead lift known as a telescopic handler (telehandler) from Hendershot, which was eventually used to assist the workers in placing sheet metal on the roof. However, at the time of the accident, Campbell was standing on a pallet placed as a platform on the lift, with the lift being operated by Boone. A piece of the sheet metal being lifted came into contact with the nearby power line or "electricity arced from the electrical distribution line," shocking Campbell and knocking him off of the lift and onto the ground. Campbell alleged to have sustained "severe and permanent physical injuries" therefrom.

Campbell included several negligence claims leveled against several parties, including Hendershot. Campbell asserted that Hendershot's duties "specifically include[d], but [were] not limited to":

1. "the duty to provide equipment that is reasonably safe for the intended work and reasonably safe from known or foreseeable hazards,"

2. "the duty to familiarize the user with the controls and safety functions of the equipment," and

3. "the duty to refrain from renting the equipment to an unqualified user."

According to Campbell, Hendershot breached these duties by:

a.  Failing to maintain the overhead lift in a reasonably safe condition;

b.  Providing an overhead lift that was not in a reasonably safe condition[;]

c.  Providing an overhead lift that was not reasonably safe for the intended work and/or the known and/or foreseeable hazards associated with the use of the equipment;

d.  Failing to familiarize the user with the control and safety functions of the overhead lift;

e.  Failing to offer or provide training on the safe operation and use of the overhead lift;

f.  Negligently entrusting the overhead lift to one or more persons who were not qualified or certified to operate an overhead lift; [and]

g.  Negligently entrusting the overhead lift to one or more persons that were known, or should have been known, to likely use the lift in a manner posing an unreasonable risk because of the user's inexperience.

Hendershot denied Campbell's allegations and moved for traditional and no-evidence summary judgment. For Campbell's negligence claim, Hendershot argued that Campbell lacked evidence to support the elements that Hendershot owed a duty to train the lessee of the equipment, that Hendershot breached any duty to train lessee or maintain the telehandler, or that Campbell's injuries or damages were proximately caused by any alleged breach of duty owed by Hendershot. For Campbell's negligent-entrustment claim, Hendershot asserted that Campbell had no evidence to

3

support the elements that Hendershot knew or should have known that Boone was incompetent or reckless, that it believed Boone to be incompetent or reckless in the operation of telehandlers, or that its alleged failure to screen was a proximate cause of Campbell's injuries. Finally, Hendershot addressed "individual allegations" that referred to alleged defective conditions of the telehandler—what Hendershot contended was a type of product-liability claim. Hendershot argued that there was no evidence to support Campbell's claim for several reasons, including that there was no evidence of a defect in the operation of the telehandler or the warnings and instructions that accompanied the lift, or that Hendershot failed to maintain the telehandler. Campbell further alleged gross negligence, which Hendershot addressed in its no-evidence summary judgment motion.

In its motion for traditional summary judgment on Campbell's negligent-entrustment claim, Hendershot argued that the evidence shows that its rental coordinator, Jason Briggs, did inquire into Boone's experience and ability, to which Hudson assured him that Boone possessed prior experience. Following up that conversation, Briggs called Boone before delivery "to confirm [that Boone did not] need any assistance with anything[,] including the operation of the telehandler."

For Campbell's allegations that Hendershot failed to train or instruct the user of the telehandler, Hendershot argued that not only did it not owe such a duty, but that Boone represented that he had experience operating such equipment and that, pursuant to the rental agreement, the lessee agreed to provide all necessary training, instruction, and warning to the users. Finally, Hendershot argued that the evidence showed that any alleged breach was not the proximate cause of Campbell's injuries because Boone testified that he had been aware of the hazards of attempting to use

4

the telehandler as a man lift[1] and of working too close to power lines. To support its arguments, Hendershot included, among other evidence, a sworn affidavit by Briggs, excerpts of Boone's deposition testimony, the rental contract, and portions of the product manual for the telehandler.

In Briggs's affidavit, he averred that Hudson had advised him that the telehandler would "be used to lift red iron for the construction of a barn"[2] and that "Boone would be operating the telehandler." Briggs inquired into Boone's experience, to which he "was told that Boone had a lot of experience working with heavy equipment including the use of a telehandler." Briggs also swore that, consistent with his standard practice, he personally contacted Boone, and he did not note any request for assistance from Boone. Boone confirmed in his testimony that he received a direct call from Hendershot asking him if he was competent to operate the telehandler and offering to answer questions that Boone might have about it.

In Boone's deposition testimony, he recounted his history of working with telehandlers, cranes, and other heavy machinery professionally for several years. Boone explained that in order to use the equipment, he had to undergo training and certification, which covered safe operation of the equipment. Boone recalled that after he left his job operating cranes, he worked for a company "hang[ing] iron," which he did for about two years. About four years prior to the incident giving rise to this case, Boone was laid off and began remodeling houses. Boone testified that both he and Hudson discussed and were aware of the power line, the potential danger

[1]The term man lift, as used in this opinion, is a telescopic platform that has a basket or barrier in which a person could stand and work.

[2]*See AKIB Constr. Inc. v. Shipwash*, 582 S.W.3d 791, 795 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (describing "red irons" as "the steel beams that formed the structure of the building").

of working in close proximity to it, and that Boone adjusted how construction was to be done to accommodate it.[3]

The rental contract provided, among other terms and conditions, that the lessee had "AGREE[D] TO PROVIDE ANY AND ALL NECESSARY FAMILIARIZATION, TRAINING, INSTRUCTIONS[,] AND WARNINGS TO ALL USERS" of the telehandler, and to "ensure that [it] is used safely and <u>only</u> . . . **for its intended purpose(s)** . . . <u>BY PROPERLY TRAINED, QUALIFIED, CERTIFIED AND/OR LICENCED (AS APPLICABLE) OPERATORS</u>" and . . . "in full compliance with the instructions as well as all applicable laws, rules and regulations, at all times."

The manufacturer's operating manual and the telehandler, as depicted in the photographs, provided numerous warnings. As relevant here, printed in the manual was a warning that stated: "WARNING FALL HAZARD DO NOT use this machine to lift people or work platforms." The manufacturer's operator manual was in the glove box of the telehandler, and Boone testified that he read the manual. The following warning, which included a graphic, was visible from the operator's seat of the telehandler: "DANGER ELECTROCUTION HAZARD Keep machine, boom and load 10 feet (3 m) or more away from power lines."[4]

Campbell responded to Hendershot's motion, stating that he "has not asserted products liability claims against . . . Hendershot," but rather, those allegations related to "the fact that [the telehandler]" had a known risk regarding overhead lines, that Hendershot delivered the equipment to a location or build site that was

---

[3]Hudson confirmed in his testimony that a preaccident discussion regarding the danger of the power line occurred.

[4]This warning graphic was also included in the operator's manual.

"dangerously close" to a power line, and that the telehandler was not intended to be a man lift, yet Hendershot never inquired into its intended usage on the construction site. Addressing Hendershot's challenge to the negligent-entrustment claim, Campbell argued that Hendershot entrusted the telehandler to Cora and Hudson, who were incompetent, and to Boone, who was both incompetent and reckless. To support Campbell's assertions as to Boone, Campbell pointed to Boone's deposition testimony that his prior work experience, upon which Hendershot relied in its motion, occurred four to six years prior to the accident, and that Boone's forklift certification had expired. Campbell further argued that Hendershot should have known that Boone was incompetent and reckless, a necessary element to a negligent-entrustment claim, because had Hendershot inquired, it would have learned of Boone's recent accident with a tractor that necessitated the rental of the telehandler. On that issue, Boone testified that he was attempting to lift the main beam with a tractor when the beam slid off the chains and crushed the seat and steering wheel of the tractor. Boone also testified that Briggs's only question to him at the time of the rental of the telehandler was, "Do you have any questions?" However, before that, Boone testified that Briggs had asked if he knew how to operate the telehandler.

As to Hendershot's alleged duty to train Cora, Hudson, and Boone, Campbell conceded that it is a question of law whether such a duty exists in these circumstances, but he argued that the law as applied to the circumstance supports the recognition of a duty. Campbell then pointed to Cora's, Hudson's, and Boone's depositions to show that Hendershot did not train any of them.

Campbell also presented a recording between Ron Hendershot, the owner of Hendershot, and David Stone, an investigator for United Cooperative Services, a codefendant, wherein Ron remarked that people who rent their equipment "out in the country" may not be following safety guidelines. In his deposition, Stone

7

acknowledged that people use the telehandlers as makeshift man lifts and that, in any application, it poses a hazard when used near power lines.

Hendershot objected to the recording between Ron and Stone as being unauthenticated and to Stone's testimony as offering a legal conclusion. The trial court overruled Hendershot's first objection but sustained the second, on the record. The trial court held a hearing on Hendershot's combined motion and ultimately granted the motion. The trial court then severed Campbell's claims against Hendershot into its own cause number, rendering the order granting summary judgment a final, appealable order. From Campbell, there were no issues, arguments, or evidence that the telehandler was defective or had a defect, that Hendershot failed to maintain the telehandler, or that Boone did not know how to manually operate the telehandler.[5] There was no allegation that Hendershot should have been on the premises, was in control of the work or construction, or knew of the particular use of the telehandler by the workmen at the specific time of the accident. Therefore, all allegations were leveled at acts or omissions of Hendershot at the time it rented and delivered the telehandler.

*Standard of Review*

We review a trial court's grant of summary judgment de novo. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). When the trial court does not specify the grounds for its ruling, as is the circumstance here, a summary judgment

---

[5]While Campbell's petition pleads a "duty to familiarize the user with the controls and safety functions of the equipment" as contributing to the accident, Campbell did not argue nor did he provide summary judgment evidence that Boone was unfamiliar with how to control or operate the telehandler; rather, it argued that he operated it by lifting people and did so in close proximity to a power line. Boone's testimony that he had no difficulty operating the telehandler, that it was "fairly simple" to operate, and that the telehandler presented no defects or malfunction while he was operating it was uncontroverted.

must be affirmed if any of the grounds on which summary judgment was sought are meritorious. *Id.*

"To defeat a no-evidence motion, the nonmovant must produce at least a scintilla of evidence raising a genuine issue of material fact as to the challenged elements." *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 181 (Tex. 2019); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003); *see* TEX. R. CIV. P. 166a(i). A no-evidence challenge will be sustained when:

> (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact.

*Merriman*, 407 S.W.3d at 248 (quoting *King Ranch*, 118 S.W.3d at 751).

A party moving for a traditional summary judgment bears the burden of proving that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017). For a trial court to grant a defendant's traditional motion, the defendant must conclusively negate at least one essential element of the cause of action being asserted by the plaintiff or conclusively establish each element of a defense or an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). "Evidence is conclusive only if reasonable people could not differ in their conclusions." *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). If the movant initially establishes a right to summary judgment on the issues expressly presented in the motion, then the burden shifts to the nonmovant to present to the trial court any issues or evidence that would preclude summary judgment. *See City of Houston*, 589 S.W.2d at 678–79.

9

In reviewing either a traditional or a no-evidence summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *KMS Retail*, 593 S.W.3d at 181; *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We credit evidence favorable to the nonmovant if reasonable jurors could do so, and we disregard contrary evidence unless reasonable jurors could not. *Samson Expl., LLC v. T.S. Reed Props., Inc.*, 521 S.W.3d 766, 774 (Tex. 2017); *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex. 2007).

Ordinarily, when a party moves for summary judgment on both no-evidence and traditional grounds, we address the no-evidence grounds first. *See Merriman*, 407 S.W.3d at 248 ("[I]f the non-movant fails to produce legally sufficient evidence to meet [its] burden as to the no-evidence motion, there is no need to analyze whether the movant[s] satisfied [their] burden under the traditional motion."); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). The reason for this is to avoid redundancy.

*Lessor of Rental Equipment Duty to Train/Instruct*

A. *Applicable Law*

"The elements of a negligence claim are (1) a legal duty owed by one person to another, (2) a breach of that duty, and (3) damages proximately caused by the breach." *Spurlock v. Beacon Lloyds Ins. Co.*, 494 S.W.3d 148, 155 (Tex. App.—Eastland 2015, pet. denied). Whether a duty exists is a threshold inquiry in a negligence case. *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006). The existence of a duty is a question of law for the court to decide from the facts surrounding the occurrence in question. *HNMC, Inc. v. Chan*, 683 S.W.3d 373, 380 (Tex. 2024) (citing *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990)).

If a duty has not previously been recognized, we must determine "whether a duty should be imposed in a defined class of cases." *Id.* (quoting *Pagayon v. Exxon Mobile Corp.*, 536 S.W.3d 499, 504 (Tex. 2017)). To determine whether a duty exists, "we weigh 'the risk, foreseeability, and likelihood of injury . . . against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant.'" *Houston Area Safety Council, Inc. v. Mendez*, 671 S.W.3d 580, 583 (Tex. 2023) (quoting *Elephant Ins. Co., LLC v. Kenyon*, 644 S.W.3d 137, 145 (Tex. 2022)). "Additional considerations include 'whether one party would generally have superior knowledge of the risk or a right to control the actor who caused the harm.'" *Kenyon*, 644 S.W.3d at 145 (quoting *Humble Sand & Gravel, Inc. v. Gomez*, 146 S.W.3d 170, 182 (Tex. 2004)).

Some factors, such as risk and foreseeability, may turn on facts that cannot be determined as a matter of law and must instead be resolved by the factfinder; however, such instances are unusual. *Mendez*, 671 S.W.3d at 583. As we have said, "[t]he question is whether a duty should be imposed in a defined class of cases, not whether the facts of the case at hand show a breach." *Id.* (quoting *Pagayon*, 536 S.W.3d at 504).

"Breach of a duty proximately causes an injury if the breach is a cause in fact of the harm and the injury was foreseeable." *Stanfield v. Neubaum*, 494 S.W.3d 90, 97 (Tex. 2016). "Cause in fact requires 'proof that (1) the negligent act or omission was a substantial factor in bringing about the harm at issue, and (2) absent the negligent act or omission ("but for" the act or omission), the harm would not have occurred.'" *Id.* (quoting *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Rsch. Corp.*, 299 S.W.3d 106, 122 (Tex. 2009)). "If a negligent act or omission 'merely creat[es] the condition that makes the harm possible,' it is not a substantial

factor in causing the harm as a matter of law." *Id.* (quoting *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 800 (Tex. 2004)).

"Determining whether a claim is encompassed by the statutory definition of 'products liability action' is a matter of statutory construction which we review de novo." *Lopez v. Huron*, 490 S.W.3d 517, 521 (Tex. App.—San Antonio 2016, no pet.) (citing *Valdez v. Hollenbeck*, 465 S.W.3d 217, 227 (Tex. 2015)). In Texas:

> "Products liability action" means any action against a manufacturer *or seller* for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, *negligence,* misrepresentation, breach of express or implied warranty, or any other theory or combination of theories.

TEX. CIV. PRAC. & REM. CODE ANN. § 82.001(2) (West 2017) (emphasis added). "'Seller' means a person who is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof." *Id.* § 82.001(3). Lessors can be sellers for the purposes of product liability. *Amazon.com, Inc. v. McMillan*, 625 S.W.3d 101, 107 (Tex. 2021); *Toyota Indus. Equip. Mfg., Inc. v. Carruth-Doggett, Inc.*, 325 S.W.3d 683, 688 n.4 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (noting that lessor of forklift was a "seller" under Section 82.001(3)).

Texas law provides that a seller of a product is not liable for harm caused to the claimant by the product unless the claimant proves:

(1) that the seller participated in the design of the product;

(2) that the seller altered or modified the product and the claimant's harm resulted from that alteration or modification;

(3) that the seller installed the product, or had the product installed, on another product and the claimant's harm resulted from the product's installation onto the assembled product;

(4) that:

(A) the seller exercised substantial control over the content of a warning or instruction that accompanied the product;

(B) the warning or instruction was inadequate; and

(C) the claimant's harm resulted from the inadequacy of the warning or instruction;

(5) that:

(A) the seller made an express factual representation about an aspect of the product;

(B) the representation was incorrect;

(C) the claimant relied on the representation in obtaining or using the product; and

(D) if the aspect of the product had been as represented, the claimant would not have been harmed by the product or would not have suffered the same degree of harm;

(6) that:

(A) the seller actually knew of a defect to the product at the time the seller supplied the product; and

(B) the claimant's harm resulted from the defect; or

(7) that the manufacturer of the product is:

(A) insolvent; or

(B) not subject to the jurisdiction of the court.

CIV. PRAC. & REM. CODE § 82.003(a).

B. *Analysis*

The threshold inquiry in any negligence case is whether a duty exists. *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006*)*; *Massage Heights Franchising, LLC v. Hagman*, No. 23-0996, 2025 WL 1271296, at *2 (Tex. May 2, 2025) ("A threshold legal requirement for negligence liability is that the defendant owes the plaintiff a duty."). Campbell asks this Court to hold that Hendershot as a lessor of equipment had a duty to train operators on safe operation of the equipment rented to

13

a lessee.   In particular, Campbell argues that a genuine issue of material facts exists as to whether Hendershot owed a duty to train or instruct anyone involved with the project regarding the use of the telehandler.  Campbell claims that "the law and the facts support the imposition of such a duty here."  Campbell has provided no Texas cases holding that a lessor of equipment has a duty to train.

As an initial matter, Campbell's pleading and arguments regarding an alleged duty to train or instruct actually only relate to *a duty to warn* when viewed in light of the summary judgment evidence and stripped of Campbell's choice of wording. Campbell's complaints revolve around two alleged acts/omissions—Boone using the telehandler as a makeshift man lift and failing to stay away from power lines. Campbell's arguments and summary judgment evidence do not go to training and instruction of Boone to know which lever operates different parts of the telehandler or other technical instruction.  Rather, they are that Boone did not follow the product warnings given and known.  Campbell carefully couches as *training* not to do and *instruction* not to do what Boone already knew by experience and by what the product *warnings* communicated.   Boone's testimony, which was not controverted by summary judgment evidence, established that the manufacturer's operating manual was in the glove box; that he read it; that he knew that the manual had warnings against and instructions not to use the telehandler as a man lift; that he recalled the warning on the telehandler regarding use near live electrical wires; and that, regardless of the signage on the equipment, he was aware, having read the manual, that (1) this equipment was not supposed to be used as a man lift and (2) the equipment needed to be operated at a distance/away from any power lines.  Even if we were to assume that there is some minimum duty to train and instruct a lessee by the lessor of equipment under these circumstances, then the fulfillment of that duty by Hendershot would have been exceeded here by its interview of Boone, by

14

providing the operator's manual, which Boone read, and by providing the warning stickers placed on the telehandler in direct sight of the operator.

Further, as pointed out by Hendershot, Campbell's claim, at least in part, meets the definition of a "products liability action." *See* CIV. PRAC. & REM. § 82.001(2) (defining "products liability action" to encompass *any* action against a seller allegedly caused by a defective product based on negligence); *Lopez*, 490 S.W.3d at 521 (whether a claim is a products liability action is a matter of statutory construction that we review de novo); *see also Toyota Indus. Equip. Mfg.*, 325 S.W.3d at 691 n.6 (noting that how a response to a motion for summary judgment descriptively casts the pleadings—"that he is not alleging a products liability claim"—does not alter the underlying nature of the case). Specifically, Campbell alleged that Hendershot was negligent by "[p]roviding an overhead lift that was not in a reasonably safe condition" and "[p]roviding an overhead lift that was not reasonably safe for the intended work and/or the known and/or foreseeable hazards associated with the use of the equipment." Additionally, Hendershot meets the definition of a seller. *See* CIV. PRAC. & REM. § 82.001(3); *McMillan*, 625 S.W.3d at 107 (noting that lessors can be sellers). Thus, as pled by Campbell, Hendershot would only have a duty under one of the enumerated exceptions established by Section 82.003—none of which has Campbell alleged. *See* CIV. PRAC. & REM. § 82.003.

Regardless of whether the acts or omissions are couched in terms of a lack of instruction, training or warning, it is a claim of defective marketing by the lessor, and defective marketing through inadequate warnings is a product-defect claim.[6] As

---

[6]Cases in various fact situations hold that there is no duty to warn if the danger is open and obvious, or if the danger is otherwise known. *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 211–12 (Tex. 2015)

15

to Boone, the ultimate user/operator of the telehandler, the summary judgment evidence is not controverted—the relevant dangers were open and obvious and/or the danger was actually known through his work and experience, the accompanying operator's manual that he read and the  warnings on the telehandler.  *See Gomez*, 146 S.W.3d at 183 ("When the foreseeable users of a product have special training, a supplier has no duty to warn of risks that should be obvious to them, even if persons without such training would not appreciate the risks.").

Campbell nonetheless argues that the balancing test as set out in *Mendez* supports the existence of a legal duty to train potential operators.  *See Mendez*, 671 S.W.3d at 583.  For that test, "we weigh 'the risk, foreseeability, and likelihood of injury . . . against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant." *See id.*  We may also consider "whether one party would generally have superior knowledge of the risk or a right to control the actor who caused the harm." *See Kenyon*, 644 S.W.3d at 145 (quoting *Gomez*, 146 S.W.3d at 182).

Campbell argues that: (1) the risk was high because Hendershot entrusted the telehandler to "three incompetent and/or reckless users," (2) the building site was "in obvious proximity to an overhead [power] line," and (3) Boone "engaged in numerous and repeated reckless acts, both prior to and after the entrustment took place."

---

(employee in a slip-and-fall case); *Jack in the Box, Inc. v. Skiles*, 221 S.W.3d 566, 569 (Tex. 2007) (employer did not have duty to warn employee about obvious danger in using ladder to climb over malfunctioning lift gate); *Sauder Custom Fabrication, Inc. v. Boyd*, 967 S.W.2d 349, 349–51 (Tex. 1998) (risk that 150 pound ring would fall when its tension bolts were released was obvious; "the duty to warn is limited in scope, and applies only to hazards of which the consumer is unaware") (emphasis omitted); *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 382 (Tex. 1995) (dangers of operating front-end loader without its rollover protective structure were obvious, thus precluding any duty to warn); *Morgan v. Wal-Mart Stores, Inc.*, 30 S.W.3d 455, 469 (Tex. App.—Austin 2000, pet. denied) (pharmacist had no duty to warn patient of potential adverse reactions to prescription drugs).

16

First, as discussed more thoroughly below, there is no evidence that Hendershot knew of reckless acts by Boone before the entrustment took place.[7] Additionally, the existence of alleged reckless acts *after* the entrustment does nothing to establish a duty; rather, we look to the degree of risk and foreseeability of the injury. *See Mendez*, 671 S.W.3d at 583.

The risk of injury while operating a telehandler and other heavy equipment largely depends on its operator. That the building site is in close proximity to overhead power lines does not necessarily equate to a higher risk because a prudent operator should ensure that the power lines are deactivated before operating near them.[8] *See, e.g.*, *Kenyon*, 644 S.W.3d at 150 (noting that there was no reason for insurer to anticipate that insured during dangerous conditions or circumstances would take photographs of an automotive accident putting himself in harm's way). Moreover, the foreseeability of injury when operating in close proximity to charged overhead power lines is open and obvious. *See id.*; *Los Compadres Pescadores, L.L.C. v. Valdez*, 622 S.W.3d 771, 789 (Tex. 2021) (recognizing an inherent danger by working near live power lines and that workers should take reasonable measures to protect themselves). Similar to *Kenyon*, the risk of harm was equally foreseeable to Campbell and Boone as it otherwise might have been to Hendershot—indeed, it was likely more foreseeable to Campbell and Boone, rather than Hendershot, as there is no evidence that Hendershot knew that this telehandler would be used by Boone as a man lift or that the overhead power lines would remain active. *See Kenyon*, 644

---

[7]Boone testified that Hendershot was not made aware of the construction group's use or intent to use the telehandler as a man lift.

[8]This building site was next to the existing home of Jesse and Cora Kendrick and was approximately six feet to the side of an overhead electrical power line that sloped from a pole down to the Kendricks' home.

S.W.3d at 150; *see also Phillips*, 801 S.W.2d at 525 (noting that "foreseeability of the risk is 'the foremost and dominant consideration'" (quoting *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987))).

Additionally, there is no evidence that Hendershot should have foreseen that Boone would disregard safety warnings given and in plain sight on the telehandler. *See Mendez*, 671 S.W.3d at 583. Campbell nonetheless argues that an injury was foreseeable by Hendershot because Ron Hendershot acknowledged that some individuals may not utilize proper safety equipment when operating a man lift. However, the context of Ron's statement was regarding the use of fall restraints on proper *man lifts*, not the general misuse of equipment or disregard of safety warnings on *telehandlers*. As such, Ron's statement does not tend to show that Hendershot could or should have foreseen that an operator—Boone—who had read the manual, had equipment experience and knew of the potential hazards, was going to disregard the safety warnings.

As for the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant: requiring lessors of equipment to assess the dangers of each construction location and train every lessee on each type of equipment would prove to be unreasonably burdensome. *See HNMC*, 683 S.W.3d at 380 (noting that the question is whether a duty should be imposed to a defined class of cases). Campbell likens the situation to an employer training an employee on equipment. We disagree. Training an employee on equipment typically occurs once with regular refreshers and with on-the-job use of that equipment, and includes on-site employer supervision. Here, Hendershot and others similarly situated to Hendershot would potentially have to provide training and instruction each time equipment is rented to each person who *might* use or operate it and provide the training at each different

location of activity.  If such an organization leased out several pieces of equipment to multiple parties, it might require sending an instructor for each piece of equipment to each site.  Campbell posits that Hendershot's check-in/check-out sheet already contemplates such training; to the contrary, the rental contract expressly places the burden of training and safe use on the lessee.

Moreover, training all lessees of equipment may have little utility when, as here, Boone was already familiar with the unreasonable risks of attempting to use the telehandler as a man lift and near live power lines.  *See Kenyon*, 644 S.W.3d at 145.  An experienced user would usually be in a superior position to assess task and location risks.  On site placements and particular tasks of usage of equipment can vary from hour to hour, always subject to change and adjustment—the knowledge of which would be onerous to impose upon a lessee of equipment.  *See id.*  Boone and the other workers, such as Campbell, would have had a superior knowledge of the risks associated with their specific conduct because they knew how they were going to use the telehandler, where they were going to use it, and that they had not ensured that the power lines had been deactivated.  Campbell's position is further weakened by the evidence that the manufacturer's operator manual provided by Hendershot contained warnings against the very behaviors engaged in here.  *See Gen. Motors Corp. v. Saenz*, 873 S.W.2d 358–59 (Tex. 1993) (There is a presumption that an adequate warning will be heeded.)  Additionally, and of equal significance, is that Hendershot had no authority to control any worker, let alone Boone.  *Kenyon*, 644 S.W.3d at 145.  These variables would typically be true for most heavy equipment lessors.  *See HNMC*, 683 S.W.3d at 380.

Having weighed the factors, we decline to establish a general legal duty to train lessees on the use of rental equipment.  Finally, Hendershot's summary judgment evidence shows that if Hendershot owed a duty to train and breached that

duty, that such breach was not the proximate cause of Campbell's injuries. *See Stanfield*, 494 S.W.3d at 97. Boone's testimony that he was aware of the risks and warnings but disregarded them demonstrates that training him would not have led to a different result. *See id.* (requiring the act or omission be "but for" cause of the harm). Accordingly, we overrule Campbell's issues that relate to Hendershot's alleged duty to train or instruct the operators of its equipment.[9]

*Negligent Entrustment—No Knowledge of Recklessness or Incompetence*

A. *Applicable Law*

To establish Hendershot's liability for negligent entrustment, Campbell had to prove that:

(1) Hendershot entrusted the telehandler to Boone;

(2) Boone was an incompetent, or reckless forklift operator;

(3) at the time of the entrustment, Hendershot knew or should have known that Boone was an incompetent, unlicensed, or reckless operator;

(4) Boone was negligent on the occasion in question; and

(5) Boone's negligence proximately caused the accident.

*See 4Front Engineered Sols., Inc. v. Rosales*, 505 S.W.3d 905, 909 (Tex. 2016) (citing *Goodyear Tire & Rubber Co.*, 236 S.W.3d at 758). "[T]he name 'negligent

---

[9]While Appellant asked for "revers[al] [of] the trial court's order granting Appellee Hendershot Equipment Co., Inc.'s no-evidence and traditional motions for summary judgment in its entirety" there was no specific argument briefed as to gross negligence or exemplary damages. It is progressively axiomatic that if there is no duty, there can be no negligence, and if there is no negligence there can be no gross negligence. So as to Campbell's gross negligence claims, summary judgment was proper. "[G]ross negligence presumes a negligent act or omission and includes two further elements." *Bastida v. Aznaran*, 444 S.W.3d 98, 109 (Tex. App.—Dallas 2014, no pet.); *see also* CIV. PRAC. & REM. § 41.001(11) (West Supp. 2024) (defining gross negligence); *AEP Tex. Cent. Co. v. Arredondo*, 612 S.W.3d 289, 298 (Tex. 2020) (existence of a duty of care is an element of negligence and gross-negligence claims); *Sonic Sys. Int'l, Inc. v. Croix*, 278 S.W.3d 377, 395 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) ("finding of ordinary negligence is prerequisite to a finding of gross negligence"); *Trevino v. Lightning Laydown, Inc.*, 782 S.W.2d 946, 949 (Tex. App.—Austin 1990, writ denied) (holding that "one's conduct cannot be grossly negligent without being negligent").

entrustment' can be misleading, because the claim requires a showing of more than just general negligence"; here, it requires proof that Boone was incompetent to operate the telehandler or would operate it recklessly, *and* that Hendershot knew or should have known at the time of the rental of the operator's incompetence or recklessness. *Id.* at 910. These entrustment elements were not met with contravening evidence by Campbell in response to the no-evidence summary judgment motion.

It is not sufficient that Hendershot knew that Boone was or could be negligent; rather, Campbell must show that it knew or should have known that he was reckless or incompetent. *Id.* at 909–10. While a failure to inquire into Boone's skills or history could support the element that Hendershot "should have known" that he was incompetent or reckless, Campbell is required to show that the inquiries not made would have revealed the risk that establishes liability for negligent entrustment. *Id.* at 910. Experience but a lack of formal training and certification does not per se establish that Boone was incompetent or reckless. *Id.* at 910–11. And "[e]vidence of negligence does not establish recklessness." *Id.* at 911. Rather, to show recklessness, there must be evidence that the actor engaged in an act he or she knew or should have known posed a high degree of risk or serious injury. *Id.* (citing *City of Amarillo v. Martin*, 971 S.W.2d 426, 430 (Tex. 1998)).

In *4Front*, the Supreme Court of Texas left open the question of whether negligent entrustment applies to the use of forklifts.[10] Instead, the supreme court

---

[10]Texas courts have applied the negligent-entrustment theory to a variety of motorized products. *See, e.g.*, *Newkumet v. Allen*, 230 S.W.3d 518, 522 (Tex. App.—Eastland 2007, no pet.) (jet boat); *Jamar v. Patterson*, 910 S.W.2d 118, 121 (Tex. App.—Houston [14th Dist.] 1995, writ denied) (dune buggy); *Monroe v. Grider*, 884 S.W.2d 811, 815 (Tex. App.—Dallas 1994, writ denied) (golf cart); *Donahue v. Polaris Indus., Inc.*, No. 02–11–00279–CV, 2012 WL 1034908, at *2 (Tex. App.—Fort Worth Mar. 29, 2012, pet. denied) (mem. op.) (all-terrain vehicle); *Bustamante v. Gonzalez*, No. 04-09-00481-CV, 2010 WL 2298841, at *4 (Tex. App.—San Antonio June 9, 2010, pet. denied) (mem. op.) (tractor).

determined that the plaintiff was unable to establish that the forklift's operator was reckless or incompetent or that 4Front knew or should have known that he was reckless or incompetent. *Id.* at 909–11.

*Analysis*

Campbell argues that the facts in this case are distinguishable from *4Front* because an accident occurred while Boone was operating different equipment—a tractor—just days prior to renting the telehandler from Hendershot. Campbell posits that Hendershot would have discovered that Boone was reckless or incompetent had it made an inquiry into Boone's experience and competency. Campbell further suggests that Boone's forklift license expiring supports a finding that he was incompetent. In order to fully address Campbell's arguments, we will assume, without deciding the same, that Campbell could bring a claim for Hendershot negligently entrusting the telehandler to Boone, Cora, and Hudson. *See 4Front*, 505 S.W.3d at 909 (leaving open the question of whether negligent entrustment applies to forklifts).

We first address Campbell's assertion that Hendershot did not make *any* inquiries into Boone. In support of this assertion, Campbell includes Boone's response to a series of questions:

> [CAMPBELL'S COUNSEL]: So you kind of know where I'm going, because I'm not trying to be sneaky with you in any kind of way, when [Briggs] called you up and said, We're about to deliver this SkyTrac out to this piece of property. Do you have any questions about how to use this piece of machinery, you don't recall him asking you, How long has it been since you've been on a piece of equipment like this, since you've operated a telehandler? Do you --
>
> [BOONE]: No.
>
> [CAMPBELL'S COUNSEL]: -- have a certificate for operating a forklift? Is it expired? Have you renewed it? When is the last time

you went through a refresher course on it?  You don't recall him asking you any of those questions?

. . . .

[BOONE]:  No.

[CAMPBELL'S COUNSEL]:  You recall him asking you one thing, which is, Do you have any questions?

. . . .

[BOONE]:  Correct.

However, before that exchange, Boone testified that Hendershot asked, "if [he] knew how to operate it and if [he] had any questions."  Moreover, Hendershot's employee, Briggs, stated in his affidavit that he did inquire into Boone's experience with Hudson prior to delivering the equipment.  Briggs also claimed that he inquired into the telehandler's intended use, which was to lift red iron.  Accordingly, the record does not support Campbell's assertion that Hendershot did not conduct any inquiry.  Additionally, even if we ignored Boone's initial response, Campbell's argument nonetheless fails because the information in the record regarding the tractor accident fails to demonstrate that it was caused by any reckless or incompetent behavior by Boone.

The colloquy that Campbell argues indicates prior reckless or incompetent behavior is as follows:

[HENDERSHOT'S COUNSEL]:  Okay.  All right.  So when you started this project, was the use of any equipment--before you obtained the telehandler from Hendershot, you were using some other equipment, right?

[BOONE]:  Yes.

23

[HENDERSHOT'S COUNSEL]: Okay. And I think you used something for the foundation or for ground work.

[BOONE]: I used a tractor.

[HENDERSHOT'S COUNSEL]: Okay. Are you the person that operated that?

[BOONE]: Correct.

[HENDERSHOT'S COUNSEL]: Was that rented? Was that equipment rented?

[BOONE]: No.

[HENDERSHOT'S COUNSEL]: Okay. How did you come--

[BOONE]: That's my mom's and stepdad's tractor.

[HENDERSHOT'S COUNSEL]: Okay. Got it. And so my understanding is during the course of the project, when using that tractor, you were using it to try and lift some equipment up to the roof of the building; and there was an incident?

. . . .

[HENDERSHOT'S COUNSEL]: Okay. That fell, right, and caused some damage?

[BOONE]: Yes, it did.

[HENDERSHOT'S COUNSEL]: Okay. So was it at that time that--go ahead.

[BOONE]: It slid off the chains and crushed the seat and the steering wheel of that tractor.

Contrary to Campbell's assertion, an inquiry into and discovery of this information with regard to a tractor would not have demonstrated that Boone was incompetent or reckless in the use of the telehandler as a makeshift man lift or around power lines.

*See id.* at 910 (holding that the proponent of negligent entrustment had to show that inquiry would have revealed facts that would have caused a reasonable lessor to discover that the operator was incompetent or reckless, not that he was not formally trained or certified). First, the manner and cause of the tractor accident is absent from the record—we do not know whether the accident was caused by Boone's acts or omissions or that of another and whether ground conditions, tractor or other equipment malfunction, weather or other unforeseeable causes contributed or were solely responsible. For example, the accident could have been caused by the person who was to secure the beam or caused by a chain that was inadequate to hold or prevent slippage, rather than any incompetence or recklessness on the part of Boone. In the end, even if there were some fault on the part of Boone, we have no evidence that the tractor accident was caused by recklessness or incompetence as opposed to ordinary negligence. *See id.* at 911 (holding that negligence is not evidence of recklessness).

Campbell also argues that had Hendershot inquired into Boone's prior work and certification history, it would have discovered that he was reckless or incompetent. According to Campbell, the fact that Boone had not operated heavy equipment in the years leading up to the accident is evidence supporting the element that Hendershot should have known that Boone was reckless or incompetent. As discussed, we disagree. Boone testified in his deposition regarding his extensive experience. Considering this experience, even the fact that he had not operated such equipment in some time would not be evidence of future incompetence or recklessness. Although Hendershot did not make a specific inquiry into Boone's work history when it leased or delivered the equipment, if it had, it would have discovered that Boone had several years' experience operating heavy machinery. To the extent that inexperience does not establish incompetence, neither can a lapse of

25

several years. *See Robson v. Gilbreath*, 267 S.W.3d 401, 406 (Tex. App.—Austin 2008, pet. denied) ("[E]vidence that a driver is inexperienced, without more, does not permit an inference that the driver . . . was otherwise an incompetent driver."); *see also Aboushadid v. Ward*, No. 07-05-0140-CV, 2007 WL 397117, at *3 (Tex. App.—Amarillo Feb. 5, 2007, no pet.) (mem. op.) (holding that evidence of inexperience was insufficient to survive summary judgment on negligent-entrustment action).

Similarly, to the extent that Campbell argues that Cora's and Hudson's lack of experience and operator's license establishes their incompetence, Campbell's argument fails. *Robson*, 267 S.W.3d at 406; *Aboushadid*, 2007 WL 397117, at *3. There is no evidence of the acts or omissions of Cora or Hudson—who never operated the telehandler—proximately causing any of Campbell's injuries. *See 4Front*, 505 S.W.3d at 909 (requiring proof that the defendant knew that the *operator* was incompetent and, in fact, the operator proximately caused the plaintiff's injuries).

Finally, to the extent that Campbell argues that Boone's "lack of a license or certification" creates a genuine issue of material fact regarding his competency, Texas law, as Campbell concedes, does not require the operator of a forklift or telehandler to have a license to operate the equipment. *See id.* at 909 n.6 ("Texas law does not require a license to operate a forklift or prohibit an owner from permitting an unlicensed person from operating a forklift. The lack of a license is thus inapplicable in this case."). Even so, the lack of a required legal license does not establish incompetence or recklessness. *Id.* at 911.

Accordingly, we conclude that Campbell failed to present any evidence in response to the no-evidence summary judgment motion that Hendershot knew or should have known that Boone was reckless, or that Cora or Hudson engaged in the

26

operation of the telehandler and/or proximately caused Campbell's injuries. *See id.* at 909. As Campbell acknowledges, proximate cause for a negligent-entrustment claim does not require that the entrustment cause the plaintiff's injuries, but rather that the entrustee's negligent use and operation of the equipment did. *See id.* Because Campbell produced no evidence of Hendershot's negligent entrustment, we overrule Campbell's issues that relate to Hendershot's alleged negligent entrustment of the equipment. The trial court properly granted Hendershot's motion for summary judgment.

*Alleged Error in the Trial Court's Exclusion of Stone's Deposition Testimony was Harmless*

In his last issue, Campbell argues that the trial court abused its discretion when it struck a portion of Stone's testimony. The testimony from Stone at issue can be summarized as Stone acknowledging that he has seen telehandlers improperly used as man lifts before and that, whether they are used as a man lift or as intended, telehandlers pose "a known hazard of coming in proximity to an electrical line." Hendershot objected to this testimony, arguing that it called for a legal conclusion, the trial court sustained Hendershot's objection.

A. *Standard of Review*

We review Campbell's evidentiary complaint under an abuse of discretion standard. *See Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner and "without reference to any guiding rules and principles." *Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017) (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). We will reverse only if the trial court's decision constituted an abuse of discretion and the error was harmful—that is, if the error probably resulted in an improper judgment.

27

TEX. R. APP. P. 44.1(a)(1); *Gunn v. McCoy*, 554 S.W.3d 645, 668–69 (Tex. 2018); *see Wal–Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 723 (Tex. 2003). We review the entire record to determine whether an error is harmful. *Gunn*, 554 S.W.3d at 668–69; *Interstate Northborough*, 66 S.W.3d at 220. "Whether an erroneous exclusion of evidence probably caused the rendition of an improper judgment is 'a judgment call entrusted to the sound discretion of good sense of the reviewing court from an evaluation of the whole case.'" *City of Stephenville v. Belew*, 692 S.W.3d 347, 361 (Tex. App.—Eastland 2024, pet. denied) (quoting *First Emps. Ins. Co. v. Skinner*, 646 S.W.2d 170, 172 (Tex. 1983)).

B. *Analysis*

Assuming without deciding that there was error in the trial court's evidentiary ruling, when we review the entire record, we cannot say that the exclusion of Stone's testimony probably resulted in an improper judgment. *See* TEX. R. APP. P. 44.1(a); *Belew*, 692 S.W.3d at 361. First, Stone's testimony that he has seen telehandlers used as man lifts and that there is "a known hazard of coming in proximity to an electrical line" does not alter our analysis on whether a duty to train exists. *See* TEX. R. APP. P. 44.1(a); *Belew*, 692 S.W.3d at 361. As we have said, the risk of injury when operating in close proximity to power lines is obvious. *See Kenyon*, 644 S.W.3d at 150. It is also of some significance that Boone and the other workers had knowledge of the risk on this location superior to Hendershot, and that Hendershot had no authority to control any of the workers—Stone's testimony does not controvert this evidence. *See id.* Nor does Stone's testimony provide any evidence that Hendershot knew or should have known that Boone was reckless or incompetent. *See 4Front*, 505 S.W.3d at 909. Accordingly, we conclude that the exclusion of Stone's testimony did not result in an improper judgment and thus, if

28

there was error, the error was harmless.  *See* TEX. R. APP. P. 44.1(a); *Belew*, 692 S.W.3d at 361.  Campbell's remaining issue is overruled.

*This Court's Ruling*

We affirm the judgment of the trial court.


W. BRUCE WILLIAMS

JUSTICE


June 12, 2025

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.